ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Electric Boat Corporation ) | ASBCA No. 58672 |
| ) | |
| Under Contract No. N00024-03-C-2101 ) | |

APPEARANCES FOR THE APPELLANT:  Stephen J. McBrady, Esq.
Skye Mathieson, Esq.
Michelle D. Coleman, Esq.
  Crowell & Moring LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:  Craig D. Jensen, Esq.
  Navy Chief Trial Attorney
Russell A. Shultis, Esq.
David B. Stinson, Esq.
David M. Marquez, Esq.
Alana M. Sitterly, Esq.
  Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT
REGARDING ENTITLEMENT

Pending before the Board is the motion for summary judgment regarding entitlement filed by respondent, the Department of the Navy (government or Navy). The Navy seeks entry of summary judgment holding that appellant, Electric Boat Corporation (Electric Boat or EB), and its subcontractor Huntington Ingalls, Inc. (HII), cannot establish economic injury directly caused by a change in federal law, and requests dismissal of the appeal.

On December 10, 2018, we granted, in part, the Navy's earlier-filed motion for summary judgment, dismissing Electric Boat's claim for its own costs based upon the statute of limitations, but denying the motion with regard to the costs of its subcontractor HII. *Electric Boat Corporation*, ASBCA No. 58672, slip op. (December 10, 2018). Thus, despite the fact that the vast majority of the parties' briefing pertains to Electric Boat's costs, only HII's costs are at issue in this opinion. For the reasons stated below, we deny the Navy's motion.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

This appeal pertains to Contract No. N00024-03-C-2101 (the contract) for the construction of six Block II Virginia Class submarines (R4, tab 52). Familiarity with our prior opinion is assumed, and only facts relevant to the current motion are included here. The contract was primarily firm-fixed-price, but with some cost-reimbursement line items. Construction of each submarine was a fixed-price line item with cost sharing of costs above or below the target cost. (R4, tab 52 at 280-96) The contract included Clause H-9, NAVSEA 5252.233-9103, DOCUMENTATION OF REQUESTS FOR EQUITABLE ADJUSTMENT (AT) - ALTERNATE I (APR 1999), which stated:

(a) For the purposes of this requirement, the term "change" includes not only a change that is made pursuant to a written order designated as a "change order" but also (i) an engineering change proposed by the Government or the Contractor pursuant to the "Other Change Proposals" or other requirements of this contract and (ii) any act or omission to act on the part of the Government in respect of which a request is made for equitable adjustment under the "CHANGES" clause or any other article or requirement of this contract.

(b) Whenever the Contractor requests or proposes an equitable adjustment of $100,000 or more per vessel in respect of a change made pursuant to a written order designated as a "change order" or in respect of a proposed engineering change and whenever the Contractor requests an equitable adjustment in any amount in respect of any other act or omission to act on the part of the Government, the proposal supporting such request shall include the following information for each individual item or element of the request:

....

(3) Description of work which is substituted or added by the change. A list of identifiable components and equipment (not bulk materials or items) involved, should be included. Separate descriptions are to be furnished for design work and production work;

2

(4) Description of interference and inefficiencies in performing the change;

....

(c) Each proposal submitted in accordance with this requirement shall include a copy of the Contractor's ship's labor budget at the cost level in effect as of the date the event began, the cost incurred at the cost level as of the same date, and the proposed effect of the change at the cost class level.

(d) It is recognized that individual claims for equitable adjustment may not include all of the factors listed in subparagraphs (b) (1) through (b) (8) above, or that the Contractor may not reasonably be able to furnish complete information on all of the factors listed in subparagraph (b) (1) through (b) (8) above. Accordingly, the Contractor is only required to set forth in its request for equitable adjustment information with respect to those factors which are relevant to the individual request for equitable adjustment, or in the level of detail which is reasonably available to the Contractor.

(e) In addition to any information required under paragraph (b) above, each proposal submitted in support of a claim for equitable adjustment, under any requirement of this contract, in an amount which requires certified cost or pricing data, shall contain such cost or pricing data as the Contracting Officer shall require with respect to each individual claim item, and shall be in sufficient detail to permit the Contracting Officer to cross-reference the claimed increased costs, or delay in delivery, or both, as appropriate, with the information submitted pursuant to subparagraphs (b) (1) through (b) (8) hereof.

(R4, tab 52 at 428-30) The contract does not contain FAR 52.243-6, CHANGE ORDER ACCOUNTING, permitting the contracting officer to require a contractor to maintain separate accounts "of all incurred segregable, direct costs (less allocable credits) of work, both changed and not changed, allocable to the change."

As described in more detail in our previous opinion, the Occupational Health and Safety Administration (OSHA) promulgated a new regulation, referred to as Subpart P,

Fire Protection in Shipyard Employment (29 C.F.R. § 1915.501 *et seq.*), that became effective on December 14, 2004 (Fire Protection in Shipyard Employment, Final Rule, 69 Fed. Reg. 55,667-708, OSHA (Sept. 15, 2004)). Electric Boat contends that compliance with Subpart P, which modified the regulations requiring a fire watch during "hot work," increased its cost of performance by an amount sufficient to qualify for an adjustment, pursuant to Clause H-30 of the contract, to the firm-fixed-price contract line item for construction of the submarines.

Relevant to this motion, on January 30, 2006, HII submitted its Estimate of Cost Summary to Electric Boat, setting forth its "[a]dditional costs associated with complying with the increased requirements invoked by OSHA 29 C.F.R. 1915 SUBPART P" totaling $27,524,878 (gov't mot., ex. 17). HII's claimed amount was based on an estimate of 392,520 additional labor hours (*id.*).

HII's estimated cost impact was developed by determining which of its departments had a high percentage of fire watch qualified personnel (gov't mot., ex. 101 at 3172-73). HII used its Labor Resources Plan from 2005 as a baseline for labor to complete the submarines. HII then estimated, on a department-by-department basis, the percentage of fire watch work performed before the effective date of Subpart P and an estimate of the percentage increase in fire watch performed after the effective date of Subpart P, with the exception of one department that estimated a set number of fire watch hours per week for grinding, rather than welding, activity. (*Id.* at 3174, 3204)

Mr. James Myers, HII's executive in charge of cost and financing issues provided deposition testimony to the effect that it would be impractical to separately account for OSHA Subpart P costs. Mr. Myers testified that even if it were possible to create a cost code for "fire watch" that would only include the direct labor of "an individual to stand guard with a fire extinguisher" this would not measure the "ancillary efforts associated with fire watch" and that measuring these costs would be "nearly impossible" and that such "discrete cost intelligence would have been marginal, very subjective at best." (App. opp'n, ex. 26 at 79, 87-88, 90-91) EB's expert in cost estimating, Mr. James P. O'Hare, provided his opinion that HII's estimating methodology for the Subpart P regulation was based on information from supervisors familiar with HII's practices before and after Subpart P and that this was "consistent with the practices of other shipyards for pricing REAs and changes" and that HII's estimate "provides a sound basis for adjudicating" the claim pertaining to HII's costs (app. opp'n, ex. 42 at 12-13).

The Navy prepared a Technical Advisory Report (TAR), dated September 9, 2009, regarding HII's portion of the claim. The TAR recommended compensating HII for an increase of 13,548 direct labor hours (less than 5% of HII's claimed amount) as a result of Subpart P (app. opp'n, ex. 64 at 15295-300). In addition, Navy witnesses

4

testified at deposition that the OSHA Subpart P regulations caused an impact on EB and HII* (*see, e.g.*, app. opp'n, ex. 19, Hill Dep. at 99 ("OSHA required some additional fire watch in the area of – say it was nothing else, grinding, there would have to be some additional man-hours, but I don't think anywhere near what they proposed."), *see also* ex. 56, Nixon Dep. at 66-67 (some impact), ex. 57, Brucker Dep. at 32, 35, 37, 105, 118 (some magnitude), ex. 58, Lussier Dep. at 93-94 (imposed some new requirements and credit given in analysis), ex. 59, Malone Dep. at 84 (estimate 30% of proposed impact)).

On December 19, 2012, EB filed a certified claim pursuant to the Contract Disputes Act, including both EB's and HII's claimed costs (R4, tab 71). The Navy denied the claim on February 27, 2013 (R4, tab 76), and this appeal followed.

## DECISION

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).

The Navy asserts that it is entitled to entry of summary judgment in its favor because HII had the ability to separately track its fire watch activities but failed to do so and thus HII fails to establish causation and does not provide a reliable basis for calculating damages (gov't mot. at 121). Electric Boat opposes the motion, asserting that material factual disputes regarding the ability of HII to separately track its costs, and disputes regarding causation and damages prevent entry of summary judgment (app. resp. at 20-26). We agree that material factual disputes prevent entry of summary judgment.

The Navy first argues that EB has not established causation for HII's claimed costs. According to the Navy, the absence of actual cost data to support HII's claimed

---

* It is not always clear from the deposition transcript excerpts whether the deponents are referring to EB, HII, or both in their statements.

costs transforms the claim to a total cost claim or jury verdict award, and these theories require heightened proof of causation (gov't mot. at 101). According to the Navy, the fact that EB and HII did not maintain records sufficient to directly measure the increased costs means that EB and HII must be asserting a total cost claim or be requesting a jury verdict award (gov't reply at 4). However, HII's costs are not in the form of a total cost claim or request for a jury verdict. HII is relying upon estimates by employees with personal knowledge of the events at issue (gov't mot., ex. 101 at 3172-74). This is an estimate of actual costs, and is not a total cost claim or request for a jury verdict. A total cost method claim "seeks to recover the difference between the actual cost experienced and cost anticipated in the bid." *See, e.g., Crown Laundry & Dry Cleaners, Inc.*, ASBCA No. 31900, 86-3 BCA ¶ 19,112 at 96,610. A "jury verdict" award is an award of damages where the amount of recovery can only be approximated due to a justified inability to substantiate the amount of injury by direct and specific proof. *See, e.g., Service Engineering Co.*, ASBCA No. 40274, 93-1 BCA ¶ 25,520 at 127,111 (quoting *Joseph Pickard's Sons Co. v. United States*, 532 F.2d 739, 742 (Ct. Cl. 1976)). Thus, HII is asserting an actual cost claim, with the increased cost of performance measured by estimating the increase in fire watch work performed after the implementation of Subpart P, rather than by direct measurement (gov't mot., ex. 101 at 3172-74, 3204). To be sure, HII will need to demonstrate the accuracy of its calculations at a hearing on the merits; however, as discussed below, at the summary judgment stage, HII has demonstrated the existence of a material factual dispute.

While the Navy asserts that EB has not established causation (gov't mot. at 102), EB has asserted facts sufficient to raise a factual issue. In fact, the Navy's own TAR concluded that HII had incurred increased labor hours due to the Subpart P regulation (app. opp'n, ex. 64). The Navy argues that its preliminary conclusions are not binding because the Board conducts a *de novo* review (gov't reply at 6 n.6). While the Navy's analysis is not binding on the Board, it is evidence that EB may cite to demonstrate the existence of a material factual dispute. Moreover, numerous Navy employees testified at their depositions that there was some impact to EB and HII as a result of the regulation, even though they believed the claim to be inflated (app. opp'n, exs. 19, 57-59). The Navy's citation to cases such as *Southeastern Services, Inc.*, ASBCA No. 21278, 78-2 BCA ¶ 13,239, for the proposition that appellant must establish causation before recovering under the jury verdict method ignores the fact that *Southeastern Services* was an opinion on the merits. The appellant in *Southeastern Services* was permitted to present evidence of causation and damages and the Board found that evidence lacking. However, the opinion does not stand for the proposition that an appellant cannot have an opportunity to present its evidence.

The Court of Federal Claims' holding in *Ravens Group, Inc. v. United States*, 112 Fed. Cl. 39 (2013), did dismiss a claim on summary judgment (gov't mot. at 104); however, in that case the court found that the plaintiff had not demonstrated clear

6

proof of injury. *Ravens Group*, 112 Fed. Cl. at 54-55. Although not binding on us in any event, the *Ravens Group* opinion actually supports denial of the government's motion. The plaintiff's contract provided for an adjustment to the contract if the plaintiff incurred costs over $15,000 per month responding to service calls, and based costs on labor hours. The plaintiff introduced evidence of an increase in the number of service calls, but did not present evidence of an increase in the number of labor hours because it had not recorded labor hours. The court granted summary judgment on the issue, holding that the plaintiff had not established injury. *Id.* Notably, the court rejected the government's contention that the plaintiff could only establish injury through actual labor hours, holding that it "might be able to establish injury by demonstrating that the number of monthly labor hours spent on service calls—as calculated by R.S. Means or other commercially available estimating systems and based upon the daily work sheets—required compensation." *Id.* at 55 n.16. Similarly, here HII has estimated its increased cost of performance compared to a base period before the implementation of Subpart P. The increase in estimated labor hours, combined with the Navy's TAR and the deposition testimony of Navy witnesses that there was an impact on the contractors is sufficient to create a factual issue that the regulatory change caused a change in HII's performance and that there was an increase in the cost of performance. Thus, we find that EB has established a material factual issue regarding causation preventing the entry of summary judgment.

The Navy additionally argues that EB cannot use estimates to support its claim unless the contractor was unable to collect actual data due to circumstances beyond its control (gov't mot. at 112 (citing *Orlosky Inc. v. United States*, 68 Fed. Cl. 296 (2005))). According to the Navy, "the Board requires contractors to show that it would not be feasible to support a claim with actual cost data" (gov't mot. at 112). Additionally, the Navy cites to contract Clause H-9 which requires EB to document its requested adjustment with a "level of detail which is reasonably available to the Contractor" (gov't mot. at 113 (citing R4, tab 52 at 430, Clause H-9(d))). Here, EB presented deposition testimony and an expert report asserting that it was not feasible for it to use actual cost data (app. opp'n, ex. 26 at 79, 87-88, 90-91, ex. 42 at 12-13). Moreover, the contract did not contain FAR 52.243-6 that would have required EB to maintain such data. Again, we find that material factual issues prevent the entry of summary judgment in favor of the Navy.

7

## CONCLUSION

For the reasons stated above, the Navy's motion for summary judgment is denied.

Dated:  January 28, 2019

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58672, Appeal of Electric Boat Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8